UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

-against-

DEVON DANIELS,

- - - - - - - - - - - - - - -X

12M463

TO BE FILED UNDER SEAL

COMPLAINT AND AFFIDAVIT IN
SUPPORT OF AN ARREST WARRANT

(T. 18, U.S.C. §§ 1030(a)(2)(B)
and 1030(c)(2)(A))

EASTERN DISTRICT OF NEW YORK, SS:

Pathik R. Lotwala, being duly sworn, deposes and states that he is a Special Agent with the Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such.

In or about and between April 2010 and April 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DEVON DANIELS did knowingly and intentionally access a computer without authorization and exceed authorized access to a computer, thereby obtaining information from a department and agency of the United States, to wit: the FBI.

(Title 18, United States Code, Sections 1030(a)(2)(B) and 1030(c)(2)(A))

The source of your deponent's information and the grounds for his belief are as follows:[1]

---

[1] Because the purpose of this Affidavit is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware. In addition, when I

2

## Introduction

1. I am a Special Agent of the DEA, duly appointed according to law and acting as such. I have been a DEA Special Agent for approximately nine years and am currently assigned to the New York Field Division, where I am tasked with investigating narcotics trafficking, money laundering and other offenses. I am working on the investigation described herein, with officers of the Internal Affairs Bureau (IAB) of the New York City Police Department (NYPD) and special agents of the Internal Revenue Service (IRS). I am familiar with the facts of this case through my interviews of witnesses, review of reports and records, and discussions with other law enforcement officers.

2. As set forth more fully below, the investigation has revealed that the defendant DEVON DANIELS, a NYPD uniformed patrol officer, abused his authority and position of trust by accessing a computer database of the FBI in a manner that exceeded authorized access.

## Background

I. The FINEST/MDT Systems

3. The FBI maintains the National Crime Information Center (NCIC), a computer database. The FBI is the agency authorized to acquire, collect, classify and preserve

---

rely on statements made by others, such statements are set forth in part and in substance unless otherwise indicated.

identification, criminal identification, crime and other records and to exchange such information with authorized entities, including state and local law enforcement authorities throughout the United States.

4. New York City maintains electronic database systems known as FINEST and MDT, (hereafter, the "NYPD database") that are designed to give users from qualified law enforcement agencies a single point of access to computerized law enforcement information within and beyond New York State. Qualified state and local law enforcement personnel in New York have access to various forms of information maintained in the NYPD database, including information maintained by the FBI in the NCIC database.

5. The NYPD has NYPD database accounts, which can be accessed by multiple users. NYPD officers may access the NYPD database website solely by using an assigned user identification which consists of a combination of the initials of the officer's first and last name and a six digit NYPD-issued identification number or a text password. As part of their academy training, NYPD officers are required to attend a course on the proper use of NYPD database and other confidential databases.

6. NYPD database users are warned on the website that only information that is related to official police department business is to be requested from the system. Arbitrary inquiries of individuals that do not relate to official police department

business are prohibited. Users are further cautioned that the NYPD databases are to be operated only by individuals who have been issued an official password and sign on. Only the individual signed onto the database is authorized to search the database.

II. Background

7. Since approximately October 2008, the DEA office in Wichita, Kansas has been investigating a heroin trafficking organization. One of the targets of its investigation is JERMAINE WARD. In approximately September 2010, the DEA initiated a wiretap investigation and began intercepting calls to and from a telephone used by JERMAINE WARD (the "WARD TELEPHONE"). Based on calls intercepted over the WARD TELEPHONE, the DEA identified GUY CURTIS as a heroin supplier for JERMAINE WARD. Specifically, agents intercepted a conversation between GUY CURTIS and JERMAINE WARD on October 23, 2010, in which they discussed a heroin shipment to be sent from New York to Wichita for JERMAINE WARD. During this conversation, GUY CURTIS was communicating with JERMAINE WARD using telephone number (212)920-7712 (the "CURTIS TELEPHONE").

8. On April 12, 2011, DEA agents began intercepting wire and electronic communications over the CURTIS TELEPHONE pursuant to an order signed by the Honorable Sterling Johnson, Jr., United States District Court Judge, Eastern District of New

5

York. On May 16, 2011, Judge Johnson authorized DEA agents to continue to intercept wire and electronic communications over the CURTIS TELEPHONE. Wire interception ceased on June 14, 2011.

9. The wire and electronic surveillance revealed episodes of physical violence by the CURTIS organization. For example, on April 17, 2011 (Session 2348), CURTIS discussed a retaliation shooting and the efforts CURTIS made to locate an individual CURTIS mistakenly believed was involved in an altercation between CURTIS and another person. This physical altercation involved a dispute over the selling of narcotics on Jamaica Avenue in Queens, New York. In this call, CURTIS stated to the caller, in part, "Not justified but he did that to me. The thing was... he wasn't going there to do that. Niggas knocked on the window and all that. Soon as they came into the joint and opened the shades. It was like we just went by and BAM, BAM, BAM. Actually we still don't know if nobody got hit cause the ambulance and all that shit was there. So we don't know what happened but they moved it on like..."[2]

---

[2] Not all relevant communications intercepted over the CURTIS TELEPHONE are described herein. Moreover, for those calls described, not all relevant portions of such conversations have been described. To the extent that quotations are used in the descriptions below, the quoted segments are based on line sheets and not final transcripts. Also, all dates and times are approximate and based on the monitoring equipment at the time the call was intercepted.

Case 1:12-mj-00463-LB   Document 1   Filed 05/11/12   Page 6 of 18 PageID #: 6

6

10. Further, in another call on April 19, 2011 (Session 2837), GUY CURTIS and an associate of CURTIS discussed locating a woman who was previously shot at by the associate. As discussed above, CURTIS was involved in a physical altercation that involved a dispute over the selling of narcotics on Jamaica Avenue in Queens, New York. CURTIS believed that the woman discussed in this call was his assailant's girlfriend. During this call, CURTIS' associate informed CURTIS that the associate planned to follow the woman. The associate stated to CURTIS, in part, "The corner store across the street white bitch that I shot at that night, she's in the store. I trying to follow this Bitch. I going to follow her she in that store."

11. In addition, on April 27, 2011 (Session 5928), the CURTIS TELEPHONE received a text message from another member of CURTIS' crew. The message stated: "I got a hitman if niggsz want sumthin done." On April 27, 2011 (Session 5931), CURTIS replied, "I'll tallk to u in person." The CURTIS TELEPHONE also sent the following text message on April 12, 2011 (Session 423), "Don't Come in between me n my drugs."

12. On July 1, 2011, a grand jury sitting in the Eastern District of New York returned an indictment charging OMAR BERRY, MARCELYN BOURJOLLY, JR., STEFON CLARK, GUY CURTIS, DAVID GOLDBERG, DELON HINES and ISHMAEL LAMBUS with conspiracy to distribute and possess with intent to distribute 100 grams or

7

more of heroin, in violation of Title 21, United States Code, Section 846. In January 2012, all the defendants plead guilty to conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin.

III. Probable Cause to Arrest DEVON DANIELS

13. On August 16, 2011, the Honorable Andrew Carter, Jr., United States Magistrate Judge, Eastern District of New York, signed a search warrant authorizing the search of the CURTIS TELEPHONE, which was seized from GUY CURTIS at the time of his arrest. Based, in part, on the evidence obtained from the search of the CURTIS TELEPHONE and on wire and electronic surveillance, I have learned that GUY CURTIS is the leader of "POV CITY," a violent heroin distribution organization based in the Jamaica section of Queens, New York and used the CURTIS TELEPHONE to communicate with DEVON DANIELS at telephone number (646)515-6489 (the "DANIELS TELEPHONE").[3] Further, these communications revealed that DANIELS asked CURTIS for "any working revolver," money and on numerous occasions, to borrow CURTIS' vehicles. I also learned from these communications that CURTIS inquired from DANIELS on how to get "gun shot residue off your hands," and CURTIS informed DANIELS that "I need u to clap a felon he always carrying a gun." I also learned from these communications that DANIELS provided CURTIS with the use of an

---

[3] DEVON DANIELS is the subscriber of the DANIELS TELEPHONE.

official NYPD parking plaque for CURTIS' vehicles and provided CURTIS with intelligence on fellow NYPD officers based on CURTIS' inquiry.

14. In addition, these communications revealed that on April 29, 2011, CURTIS informed DANIELS that one of CURTIS' associates, ISHMAEL LAMBUS, was in the process of being arrested by NYPD. DANIELS, while driving one of CURTIS' vehicles, immediately proceeded to the scene and surveilled the heroin drug arrest of LAMBUS. Thereafter, DANIELS exited CURTIS' vehicle and identified himself to the NYPD arresting officers as an NYPD Officer. At that time, DANIELS inquired from the arresting officers about matters concerning the arrest of LAMBUS. Upon leaving the scene, DANIELS immediately reported that information to GUY CURTIS.

15. Further, these communications revealed that DANIELS provided CURTIS with DANIELS' bank account information. DANIELS' bank account was then used to facilitate financial transactions that involved drug proceeds. For example, after DANIELS first provided his account information to GUY CURTIS, CURTIS then provided this information to JERMAINE WARD, a distributer of CURTIS' heroin in Wichita, Kansas. Thereafter, WARD wired $3,500 to DANIELS' financial account as payment for heroin CURTIS provided to WARD. DANIELS then withdrew the drug proceeds and gave it to CURTIS.

16. In addition, I learned that DANIELS, when requested by CURTIS, improperly accessed the NYPD database in order to perform criminal background checks or to obtain license plate information for CURTIS. The requested information was then relayed back to CURTIS by DANIELS. A summary of some of the improperly accessed information is set forth below.

**The April 17, 2011, Unauthorized Computer Access**

17. On April 16, 2011 at approximately 2:28 a.m., the CURTIS TELEPHONE sent the following text message to the DANIELS TELEPHONE, "Eux 6142 red clk yah," (Session C-86462). At approximately 2:29 a.m. that day, the DANIELS TELEPHONE replied, "Aite." (Session C-86463). Based on my training and experience and the investigation that has been conducted thus far, I believe that CURTIS provided this license plate to DANIELS for the purpose of DANIELS searching it through the NYPD database and providing CURTIS with the information concerning the owner of this vehicle.

18. I have been informed by members of the NYPD IAB that an audit was performed of the NYPD database account regarding any searches involving inquiries regarding license plate "EUX6142." That audit revealed that an inquiry for license plate "EUX6142," which accessed the NCIC database, was performed from a computer terminal located in an NYPD patrol car assigned within the 111 Precinct on April 17, 2011, at approximately 7:16

a.m. The inquiry was made under the password for Patrol Officer DEVON DANIELS' partner.

19. On April 17, 2011, the CURTIS TELEPHONE received a picture of the NYPD database screen which showed the name, age, address and other information regarding the registration and vehicle information associated with license plate "EUX6142. (IMG_2192.JPJ). Based on my training and experience and the investigation that has been conducted thus far, I believe that after DANIELS received the requested license plate from CURTIS, DANIELS searched the NYPD database under his partner's password. DANIELS then provided CURTIS with the information concerning the owner of this vehicle by sending to the CURTIS TELEPHONE a picture of the screen showing the results of the NYPD database search.

**The April 9, 2011, Unauthorized Computer Access**

20. On April 9, 2011, the CURTIS TELEPHONE and the DANIELS TELEPHONE texted the following messages to each other.

    DANIELS:  yo give me the plate (Session C-84840)

    CURTIS:  Yo do them plates real quick (Session C-84839)

    CURTIS:  EVW 5959 (Session C-84841)

    CURTIS:  N 1 more the guy who live across da street from yah yah (Session C-84843)

    CURTIS:  Fge2279

    DANIELS:  What u need I got it (Session C-84853)

| | | |
|---|---|---|
| DANIELS: | What u need I got it (Session C-84851) |
| CURTIS: | Lmao (Session C-84852) |
| CURTIS: | Yea I been asking for months (Session C-84855) |
| DANIELS: | The 1st one is a grey chevy surban..comes back to a company (Session C-84856) |
| CURTIS: | Oh ok (Session C-84857) |
| CURTIS: | The second one is a BMW (Session C-84858) |
| DANIELS: | Yo they both ny reg? (Session C-84859) |
| CURTIS: | Yup (Session C-84861) |
| CURTIS: | What's da name of the comp n the name on da 5series (Session C-84863) |
| DANIELS: | Nah the secound one come back to some nigga from rosedale (Session C-84867) |
| CURTIS: | Yea I kno (Session C-84868) |
| CURTIS: | That (Session C-84869) |
| CURTIS: | That's wea yah lives (Session C-84870) |
| DANIELS: | Ihold up (Session C-84871) |
| DANIELS: | Farouk D Dalrymple (dob) 2/22/80. 146 09 241st rosedale 11422 (Session C-84887) |
| DANIELS: | state farm insurance (Session C-84888) |

Based on my training and experience and the investigation that has been conducted thus far, I believe that CURTIS provided two license plates to DANIELS for the purpose of DANIELS searching those plates through the NYPD database and providing CURTIS with

12

the information concerning the owners of these vehicles.[4/] Further, after DANIELS completed the searches of these license plates, DANIELS provided CURTIS with the requested information. In addition, DANIELS informed CURTIS whenever CURTIS needed anything search in the NYPD databases, he would do it.

21. I have been informed by members of the NYPD IAB that an audit was performed of the NYPD database account regarding any searches involving inquiries regarding license plate "EVW5959." That audit revealed that an inquiry for license plate "EVW5959," which accessed the NCIC database, was performed from a computer terminal located in an NYPD patrol car assigned within the 111 Precinct on April 9, 2011, at approximately 6:36 p.m. The inquiry was made under the password for Patrol Officer DEVON DANIELS.

22. I have been informed by members of the NYPD IAB that an audit was performed of the NYPD database account regarding any searches involving inquiries regarding license plate "FGE2279." That audit revealed that an inquiry for license

---

[4] On March 24, 2011, the CURTIS TELEPHONE sent the following text message to the DANIELS TELEPHONE, "Oh yea that plate u think u can run it real quick." (Session C-81578). The DANIELS TELEPHONE responded, "Fge2279?." (Session C-81579). Thereafter, the CURTIS TELEPHONE replied, "Yup." (Session C-81580). Based on my training and experience and the investigation that has been conducted thus far, I believe that CURTIS previously provided this same license plate, Fge2279, to DANIELS for the purpose of DANIELS searching the license plate through the NYPD database and then providing CURTIS with the information concerning the owner of this vehicle.

plate "FGE2279," which accessed the NCIC database, was performed from a computer terminal located in an NYPD patrol car assigned within the 111 Precinct on April 9, 2011, at approximately 6:40 p.m. The inquiry was made under the password for Patrol Officer DEVON DANIELS.

**The November 7, 2010, Unauthorized Computer Access**

23. On November 3, 2010 at approximately 10:46 p.m., the CURTIS TELEPHONE sent the following text message to the DANIELS TELEPHONE, "Yoooo, when u get to da job can u look me up to see if I have a warrrant 867 597 124 client ID."(Session C-54888). On November 3, 2010 at approximately 10:52 p.m., the DANIELS TELEPHONE responded, "Aite." (Session C-54893).

24. On November 5, 2010 at approximately 1:48 p.m., the CURTIS TELEPHONE sent the following text message to the DANIELS TELEPHONE, "Did u ever look me up." (Session C-55149). On November 5, 2010 at approximately 1:50 p.m., the CURTIS TELEPHONE received the following text messages from the DANIELS TELEPHONE, "Nah the system was down that night" (Session C-55151) and "Saturday ill be back at work" (Session C-55154). On November 5, 2010 at approximately 2:03 p.m., the CURTIS TELEPHONE replied, "iight dats cool." (Session C-55155).

25. On November 7, 2010 at approximately 5:36 a.m., the CURTIS TELEPHONE received the following text message from the DANIELS TELEPHONE, "Yoo did the warrant check on ya name nothing showed up.everthing.clean." (Session C-55458).

26. Based on my training and experience and the investigation that has been conducted thus far, I believe that on November 3 and 5, CURTIS requested that DANIELS search CURTIS' name in the NYPD database for any outstanding criminal arrest warrants. On November 7th, I believe that DANIELS informed CURTIS that DANIELS searched CURTIS in the NYPD database and found no warrants.

27. I have been informed by members of the NYPD IAB that an audit was performed of the NYPD database account regarding searches involving inquiries regarding "Guy CURTIS." That audit revealed that an inquiry for "Guy Curtis," which accessed the NCIC database, was performed from a computer terminal located in an NYPD patrol car assigned within the 111 Precinct on November 7, 2010 at approximately 4:49 a.m. The inquiry was made under the password for Patrol Officer DEVON DANIELS.

### The June 4, 5, and 20, 2010, Unauthorized Computer Access

28. Starting on June 19 and continuing to June 20, 2010, the CURTIS TELEPHONE and the DANIELS TELEPHONE texted the following messages to each other.

| | |
|---|---|
| DANIELS: | I forgoy to tell u..sha warrent check came back good (Session C-37960) |
| CURTIS: | Oh that's what's up (Session C-37961) |
| DANIELS: | is out on him (Session C-37962) |
| DANIELS: | But another name came up witt the same date of brith Same last name but the first name was spelled different.sayin blood gang..and order of protection (Session C-37963) |
| CURTIS: | He is blood (Session C-37964) |
| CURTIS: | That might b him (Session C-37965) |
| CURTIS: | Cause he got arrested for shooting somebody like 4yrs ago (Session C-37966) |
| DANIELS: | So i prob had the wrong spellin (Session C-37967) |
| CURTIS: | Nah Im pretty sure that's how us spell it Ima get his client ID# (Session C-37968) |
| DANIELS: | Aite (Session C-37969) |
| CURTIS: | U look me up (Session C-37970) |
| DANIELS: | I think u had gave me shi.....and the comp had sha (Session C-37971) |
| CURTIS: | Oh ok (Session C-37972) |
| CURTIS: | Wea u at (Session C-37973) |
| DANIELS: | Im at work i can check now (Session C-37974) |
| DANIELS: | Get his id number now if u can (Session C-37975) |
| CURTIS: | I'm give u minds 597867124 (Session C-37976) |
| CURTIS: | Ima hit sha now (Session C-37977) |
| DANIELS: | Aite (Session C-37982) |

16

> DANIELS: Nah you that aint ya id#... it came bavk to a female (Session C-37983)
>
> CURTIS: I don't got my ID on me I thought that's what it was (Session C-37987)

Based on my training and experience and the investigation that has been conducted thus far, I believe that when DANIELS referred to "shi," it is short for "Shikey Foster-Bay," an individual that CURTIS had previously requested that DANIELS search for in the NYPD database.[5] It was later determined that CURTIS spelled the individual's name wrong and the correct spelling was "Shakey Foster-Bay." I believe that when DANIELS and CURTIS referred to "sha" in these texted messages, it is short for "Shakey Foster-Bay." Further, I believe during these texted messages, DANIELS informed CURTIS that "sha" does not have any outstanding warrants. Thereafter, CURTIS requested that DANIELS check CURTIS for any outstanding warrants in the NYPD database. DANIELS informed CURTIS that the identification number CURTIS provided DANIELS does not come back to CURTIS, but a female.

29. I have been informed by members of the NYPD IAB that an audit was performed of the NYPD database account regarding searches involving inquiries regarding ""Shikey Foster-Bay." That audit revealed that an inquiry for "Shikey Foster-Bay," which accessed the NCIC database, was performed from a

---

[5] On June 3, 2010 at approximately 6:54 p.m., the CURTIS TELEPHONE sent the following text message to the DANIELS TELEPHONE, "Shikey foster-bay 11/22/87." (Session C-35336).

computer terminal located in an NYPD patrol car assigned within the 111 Precinct on June 4 and 5, 2010. The inquiry on June 4, 2010 was made under was made under the password for Patrol Officer DEVON DANIELS and the inquiry for June 5, 2010 was made under the password for Patrol Officer DEVON DANIELS' partner.[6]

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued so that the defendant DEVON DANIELS may be dealt with according to law. Your deponent further

---

[6] I have been informed by members of the NYPD IAB that Patrol Officer DEVON DANIELS performed a background check on "GUY CURTIS" from a computer terminal located in an NYPD patrol car assigned within the 111 Precinct on June 20, 2010. However, this background check did not access the FINEST/MDT systems.

On April 21, 2010 at approximately 6:05 p.m., the CURTIS TELEPHONE sent the following text messages to the DANIELS TELEPHONE, "Yea but for some reason they wanna arrest me," (Session C-29114) and "Or put me thru da system." (Session C-29115). The DANIELS TELEPHONE immediately replied, "Word yo tonight ima run ya name through the main system to see what comes up and shit." (Session C-29118). I have been informed by members of the NYPD IAB that Patrol Officer DEVON DANIELS performed a background check on "GUY CURTIS" from a computer terminal located in an NYPD patrol car assigned within the 111 Precinct on April 23, 2010. However, this background check did not access the FINEST/MDT systems.

respectfully requests that this affidavit and any arrest warrant issued be filed under seal.

                                     Pathik R. Lotwala
                                     Special Agent
                                     Drug Enforcement Administration

Sworn to before me this
11 day of May 2012

UNITED  s/ Bloom  JUDGE
EASTER             RK